IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

John D. Leatherwood,               )
                                   )
        Plaintiff,                 )    Case No. 8:10-cv-1593-RBH-JDA
                                   )
        v.                         )    **REPORT AND RECOMMENDATION**
                                   )    **OF MAGISTRATE JUDGE**
Warden Cohen; Associate Warden Burton; )
Lt. Housey; Dennis Salwierz, B-Z Shift )
Capt.; Lt. Pinkney; Mr. Hodge, Mental )
Health, CCC; Christy Jinks, Mental Health; )
Captain G. Best; Felicia Davis,    )
Correctional Officer, all in official capacity )
and individual capacities,         )
                                   )
        Defendants.                )
_____)___

        This matter is before the Court on Defendants' motion for summary judgment. [Doc. 30.]  Plaintiff was an inmate in the custody of the Ridgeland Correctional Institute ("RCI")[1] at the time of the events herein.  Plaintiff is proceeding *pro se* and brought this civil rights action pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

        Plaintiff filed this action on June 22, 2010, alleging that Defendants Cohen, Burton, Housey, Salwierz, Pinckney,[2] and Hodges violated his 8th and 14th Amendment rights;

_____

[1] Plaintiff was transferred to McCormick Correctional Institute (MCI) on September 20, 2010.  [Doc. 27.]

[2] The correct spelling of Defendant Pinkney's name is "Pinckney." [Doc. 30-4 ¶ 3.]  The Court will use the correct spelling throughout this report and recommendation.

were deliberately indifferent; required him to stay in unsafe conditions; violated his rights under the ADA; failed to protect him; discriminated against him; exposed him to cruel and unusual punishment; and violated his due process rights.  [Doc. 1.]  On June 29, 2010, Plaintiff amended his Complaint to add Defendants Jinks, Best, and Davis.  [Doc. 5.]

On August 25, 2010, Defendants filed an Answer to Plaintiff's Amended Complaint and, on October 8, 2010, filed a motion for summary judgement.  [Doc. 30.]  By order filed October 15, 2010 pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion.  [Doc. 41.]  On November 17, 2010, Plaintiff filed his response to Defendants' motion for summary judgment.  [Doc. 52.]

## BACKGROUND

Plaintiff alleges that he informed Defendant Pinckney on April 27, 2010 that Plaintiff wanted a cell change because of problems with his roommate, inmate Brandy Charles ("Charles"). [Doc. 1 at 7.]  Defendant Pinckney recalls the conversation and spoke to Charles to resolve the situation. [Doc. 30-4, ¶ 4.]  Defendant Pinckney further advised Plaintiff to follow the South Carolina Department of Corrections ("SCDC") Inmate Grievance Procedure should he desire any follow-up.  [Doc. 30-4, ¶ 5.]  However, Plaintiff did not take or request any further action at that time. [*Id.*]

Plaintiff further asserts that during the next fourteen days, he informed Defendants Hodge and Pinckney, as well as other employees of RCI, that his welfare was in danger and he needed to be moved because he was trying to avoid trouble with his roommate. [Doc. 1 at 7.]  Plaintiff alleges that a caseworker told him he would be moved on May 17,

2010.  [*Id.*]  However, early in the morning on May 17, 2010, Plaintiff and Charles were involved in an altercation, which Plaintiff alleges began when Charles attacked Plaintiff. [*Id.*]  As a result, Plaintiff was charged with "Fighting with or without a weapon."  [Doc. 1-1 at 4.]  He pleaded guilty and accepted administrative sanctions.  [*Id.*]  Further, Plaintiff checked the box on the SCDC Informal Resolution/Administrative Resolution form that states:

> **Yes**, I accept the sanctions listed above.  I understand that I have the privilege of requesting this case be referred to a disciplinary hearing, and I waive that privilege.  I further agree that by accepting this informal or administrative resolution, I waive all appeals, including those pursuant to Al-Shabazz v. State.

[*Id.*]

Following the administrative resolution of the violation and spending seven days in a special management unit as part of the sanction [Doc. 1-1 at 4], both Plaintiff and Charles released on May 24, 2010. The two were then separated; Charles was placed in the Georgetown Unit, and Plaintiff was placed in the Beaufort Unit.  [Doc. 1 at 8.]  Plaintiff alleges that he warned Defendant Salwierz that he didn't want to go to the Beaufort Unit because of gangs.  [*Id.*]  Plaintiff further asserts there were drugs, cell phones, and wire cutters in the Beaufort Unit.  [*Id.*]  Plaintiff requested and was denied placement in protective custody.  [*Id.*]  Plaintiff further contends he spoke with Defendant Housey and other employees of RCI about "the danger to [his] life" over the next few days, but they refused to move Plaintiff.  [*Id.*]

On May 24, 2010, Plaintiff filed a Step 1 Grievance (Grievance RCI-0511-10) to appeal the facts, decision, and sanctions imposed at the administrative resolution hearing

on May 19, 2010. [Doc.16-1 at 5.]  That Grievance was unprocessed and returned for

failure to comply with SCDC Policy GA-01.12, Inmate Grievance System which states:

> The disposition of any Disciplinary/Administrative Hearing that results in a guilty plea by the inmate is considered a non-grievable issue unless the sanctions imposed are considered to be excessive in relation to the rule violation.  The sanctions imposed on your conviction are within the guidelines established in SCDC Policy OP 22.14, Inmate Disciplinary System, dated 09/01/09. Therefore, your grievance is returned to you unprocessed.

[Doc 31-1, ¶ 8.]  Plaintiff did not appeal.  [*Id.*]

Plaintiff alleges an unnamed inmate stabbed Plaintiff with a homemade knife while

Plaintiff was in the restroom in the Beaufort Unit on May 27, 2010.  [Doc. 1 at 9.]  Plaintiff

was then moved to back to the Georgetown Unit, and he alleges additional threats from

Charles began on June 4, 2010.  [*Id.*]

On June 12, 2010, Plaintiff submitted a Request to Staff Member regarding alleged

threats from Charles.  [Doc. 16-1 at 1.]  He also submitted two Step 1 Grievances

(Grievances RCI-9095-10 & RCI-9096-10) regarding alleged threats from Charles. [Doc.

16-1 at 2–3.]  These two grievances were sent directly to Inmate Grievance Administrator

Ann Hallman ("Hallman") at SCDC in Columbia, South Carolina, thereby bypassing the RCI

Institutional Grievance Procedure.    [Doc. 31-1, ¶ 11.]    Again, these requests and

grievances were returned unprocessed, stating:

> Your grievance is being returned to you unprocessed due to your failure to submit your grievance through the Inmate Grievance Coordinator (IGC) at the institution as required by SCDC Policy GA-01-12, "Inmate Grievance System."
>
> and

4

> Inmate Leatherwood: All grievances have to be filed through the institutional grievance office. RCI-9095-10 and RCI-9096-10 will not be processed due to your failure to follow policy.

[*Id.*]  Plaintiff did not appeal.  [*Id.*]

On June 16, 2010, Defendant Davis submitted an Incident Report stating that Plaintiff had threatened to physically harm Charles.  [Doc. 18-1 at 14.]  As a result, Plaintiff was charged with "Threatening to inflict harm, physical or otherwise/assault, on another inmate."  [Doc. 18-1 at 15.]  On June 23, 2010, Plaintiff checked the box on the SCDC Informal Resolution/Administrative Resolution form that states:

> **Yes**, I accept the sanctions listed above.  I understand that I have the privilege of requesting this case be referred to a disciplinary hearing, and I waive that privilege.  I further agree that by accepting this informal or administrative resolution, I waive all appeals, including those pursuant to Al-Shabazz v. State.

[*Id.*]

On June 21, 2010, Plaintiff submitted a Step 1 Grievance (Grievance RCI-0683-10) alleging he was assaulted and threatened by Charles and inmate Mike Wallace ("Wallace").  [Doc. 31-8 at 1.]  Plaintiff requested that a "caution/separation" be placed on Plaintiff, Charles, and Wallace.  [*Id.*]  Defendant Cohen denied the grievance, stating to Plaintiff:

> Your grievance was investigated and a Caution Separation is done in the Classification Office.  You need to contact your Classification Case Worker and request a separation.  It is apparent that one is not needed at this time because if the situation or threat to you was imminent, then security would have processed one.  You have since been transferred to another institution. Therefore, your grievance is denied.

[Doc. 31-8 at 2.]  Plaintiff did not appeal.  [Doc 31-1, ¶ 12.]

5

On June 23, 2010, plaintiff submitted a Step 1 Grievance (Grievance RCI-0651-10) regarding a request for a transfer to a different institution and accusing Defendant Best of forcing Plaintiff to sign an administrative disciplinary form regarding the June 16, 2010, Incident Report.  [Doc. 18-1 at 10.]  The grievance was "returned unprocessed because transfers are non-grievable pursuant to SCDC  policy."  [Doc 31-1, ¶ 13.]  Plaintiff did not appeal.  [*Id.*]

On June 30, 2010, Plaintiff submitted a Step 1 Grievance (Grievance RCI-0676-10) alleging that Defendant Davis failed to conduct security checks.  [Doc. 31-7.]  The grievance was "unprocessed because [Plaintiff] did not provide the specific information needed to indicate he attempted an informal resolution of the complaint." [Doc. 31-1, ¶ 14.] Plaintiff did not appeal.  [*Id.*]

On  July  7,  2010,  Plaintiff  submitted  two  Step  1  Grievances  (Grievances RCI-0684-10  and  RCI-0685-10)  regarding  a  request  for  caution/separation  between Plaintiff  and  Charles  due  to  perceived  threats.   [Doc. 31-9 at 1; Doc. 31-10.]   On September 23, 2010, Defendant Cohen denied the first grievance, stating:

> Your  grievance  was  investigated  and  according  to Classification, a Caution/Separation could not be justified for you,  but  you  have  since  been  transferred  to  McCormick Correctional  Institution.   Based  on  this  information,  your grievance is denied.

[Doc. 31-9 at 2.]  Plaintiff did not appeal.  [Doc 31-1, ¶ 15.]  According to Hallman, the second grievance "was a duplicate Grievance and again, the inmates had already been separated, so no further action was needed or warranted."  [Doc. 31-1, ¶ 16.]  Plaintiff did not appeal.  [*Id.*]

6

Plaintiff generally complains that Defendants failed to protect him from allegedly known threats of physical harm from other inmates in violation of his Eighth and Fourteenth Amendment rights, exhibited deliberate indifference, subjected Plaintiff to unsafe conditions, committed violations of ADA (Americans with Disability Act), discriminated against Plaintiff, subjected Plaintiff to cruel and unusual punishment, and violated due process. [Doc 1.]

In their motion for summary judgment, Defendants argue (1) Plaintiff failed to exhaust his available administrative remedies, (2) Plaintiff's claims fail to constitute a constitutional violation, (3) Defendants are entitled to qualified immunity in their individual capacities, and (4) Defendants have no liability or responsibility to Plaintiff in their individual capacities. [Doc.30-1.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not

construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.  Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:

10

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Exhaustion of Administrative Remedies**

The Court will first consider Defendants' claim that they are entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies prior to initiating litigation as required by 42 U.S.C. § 1997e(a).

 The Prison Litigation Reform Act ("PLRA") defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c); *see also* 28 U.S.C. § 1915(h). The PLRA requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C. § 1997e(a). The Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

11

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

While Plaintiff is not required to plead exhaustion in his complaint, *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005), he is required to produce evidence in response to a motion for summary judgment refuting the claim that he failed to exhaust, *see Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) ("[T]o withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial.") (citing Fed. R. Civ. P. 56(e)(2)).

The grievance procedure for the RCI facility is described as follows:

[A]ll inmates are provided an explanation of the SCDC inmate grievance process during New Admission Orientation. Inmates must make an effort to informally resolve a grievance by either submitting a Request to Staff Member Form or by discussing the grievance with the appropriate staff member. If informal resolution is not possible, then the inmate will complete a Form 10-5, also known as a Step I Grievance, and submit it to an employee designated by the warden within fifteen (15) days of the alleged incident. The grievance form must contain information about how and when attempts were made to resolve the problem informally, a brief statement of the complaint, why the inmate believes be is entitled to relief, and a brief statement of the action requested. If the inmate is not satisfied with the decision, then the inmate may appeal to the Division Director of Operations. The inmate may appeal by completing SCDC Form 10-5a, also known as a Step 2 Grievance and submitting it and the Step I Grievance to the Institutional Inmate Grievance Coordinator within five (5) days of the receipt of the response. The responsible official will then render a final decision which will be the Department's final response. Should the inmate wish to appeal this decision, the inmate has thirty (30) days to appeal to the South Carolina Administrative Law Court. At all times inmates are provided information and instructions on how to proceed.

[Doc. 31-1, ¶ 6.]

The evidence is clear that Plaintiff was well-informed of the grievance procedures[3] regarding the filing of grievances.  The record is also replete with evidence that Plaintiff filed grievances related to the allegations raised in his Complaint.  [Doc. 16-1; Doc. 31-8 at 1; Doc. 31-9 at 1; Doc. 31-10.]  What the record is missing, however, is evidence that Plaintiff was aware that he was required to do more than complete a Step 1 grievance form in order to exhaust his administrative remedies.

Hallman's affidavit indicates that the grievance procedure *requires* the filing a grievance if an informal resolution is not possible.  [Doc 31-1, ¶ 6.]  A grievance is considered file when an inmate completes a Form 10-5, also known as a Step 1 Grievance.  [*Id.*]  If the inmate is not satisfied with a grievance decision, then the inmate *may* appeal to the Division Director of Operations.  [*Id.*]  The inmate *may* appeal by completing SCDC Form 10-5a, also known as a Step 2 Grievance.  [*Id.*]

Defendants argue that the Plaintiff failed to exhaust his administrative remedies because, in certain instances, he failed to go beyond Step 1 to file a Step 2 grievance or to appeal.  [Doc 30-1 at 9.]  Hallman even affirms Plaintiff has not exhausted his administrative remedies.  [Doc 31-1, ¶ 18.]  However, there is no evidence in the record that the grievance process mandates that the inmate complete each step of the procedure for exhaustion to occur.  And even if that is the case, there is no evidence in the record that Plaintiff knew he needed to complete a Step 2 Grievance and appeal before he could file suit.  Because Defendants have not cited to any evidence which supports their contention that the completion of Step 2 is required to exahust administrative remedies, in light of the

---

[3]A review of the record shows that Plaintiff has filed seventy-three Step 1 Grievances and twenty-two Step 2 Grievances since his first date of incarceration.

permissive language in the grievance procedure, the Court cannot recommend granting summary judgment on this issue. Accordingly, the Court will address the merits of Plaintiff's allegations.

**Claims for Injunctive and/or Declaratory Relief are Moot**

First, because Plaintiff is no longer incarcerated at RCI, his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from RCI, *id.*, and, as public officials, Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Nevertheless, for the reasons set forth below, the evidence is insufficient to create a genuine issue of fact as to whether Defendants have violated Plaintiff's constitutional rights.

**Failure to Protect/Deliberate Indifference/Unsafe Conditions**

Construed liberally, Plaintiff alleges that Defendants were deliberately indifferent because they failed to protect him from other inmates, resulting in unsafe conditions for Plaintiff. Plaintiff's allegations of deliberate indifference and failure to protect implicate the Eighth Amendment's proscription against cruel and unusual punishment, not the Fourteenth Amendment's requirement of due process. *See Bell v. Wolfish*, 441 U.S. 520, 535-38 (1979) (noting that a sentenced inmate may not be subjected to cruel and unusual punishment under the Eighth Amendment and holding that claims concerning confinement conditions upon a pre-trial detainee are to be evaluated under the Due Process Clause).

14

The Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate indifference. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner,* 927 F.2d 1312, 1315–17 (4th Cir. 1991). Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*).

Upon review of the record, the Court finds that Plaintiff's alleged facts in support of his failure to protect claim simply do not rise to the level of a constitutional violation. Plaintiff does not allege any facts to show he was exposed to a substantial risk of serious harm in that if nothing was done he was almost certain to face serious injury at the hands of his cellmate. *See Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (noting that the Eight Amendment protects against risk of future harm that is "'*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers" (citation omitted) (emphasis in original)). While Plaintiff did end up in a fight with his roommate, the facts alleged did not put the Defendants on notice of a "substantial risk of

15

serious harm."  Moreover, as a result of this altercation, Plaintiff pleaded guilty and accepted administrative sanctions.  Additionally, Plaintiff does not allege any continued injury or physical impairment as a result of the altercation with his roommate.[4]

Further, the Court finds that Plaintiff's Complaint does not allege any facts to demonstrate that any Defendants were deliberately indifferent, or that, prior to the first altercation, Defendants drew or could have actually drawn the inference that there was a substantial or excessive risk that Charles could seriously harm Plaintiff.  Once Plaintiff and Charles had an altercation, the Defendants acted reasonably in moving[5] Plaintiff.

Plaintiff also fails to allege facts capable of demonstrating that any Defendants drew or could have drawn the inference that there was a substantial or excessive risk that an unnamed inmate would stab Plaintiff while in the Beaufort Unit.  Additionally, although the stated reason for the transfer was "administrative reasons, unrelated to [Plaintiff]," Plaintiff was moved from the Beaufort Unit to the Georgetown Unit on May 27, 2010 [Doc.30-4 at 2], the day he alleges he was stabbed by a homemade knife [Doc. 1 at 9].  Accordingly, summary judgment is appropriate on Plaintiff's deliberate indifference/failure to protect claim.

_____

[4]The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

[5]The Affidavit of Defendant Pinckney shows Plaintiff was moved nine times between March 13, 2010 and September 20, 2010.  [Doc. 30-4 ¶¶ 8–16.]  He was moved on June 21, 2010 to be separated from Charles.  [*Id.* ¶ 15.]  Further, Plaintiff admits he was separated from Charles on May 24, 2010, when he was released from a special management unit following the May 17, 2010 incident with Charles.  [Doc. 1 at 8.]

16

**Violation of ADA**

Title II of the ADA and § 504 of the Rehabilitation Act both prohibit discrimination on the basis of disability.[6]  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

A plaintiff seeking relief under either the ADA or the Rehabilitation Act must present sufficient evidence to establish that 1) he has a disability, 2) he is otherwise qualified to receive the benefits of the public services, programs, or activities, and 3) he was denied the benefits of such services, programs, or activities, on the basis of his disability.  *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999).  Because Plaintiff has failed to

---

[6]Because the language and purpose of Title II of the ADA and § 504 of the Rehabilitation Act are substantially the same, the same analysis applies to claims brought under either statute. *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir.1995).  The ADA applies to programs and services of a public entity, and a plaintiff has the burden of showing that his disability "played a motivating role" in the challenged action. *Id.* at 468–69.  The Rehabilitation Act applies to programs that receive federal financial assistance, and a plaintiff must show that the discrimination occurred "solely by reason of" his disability. *Id.* In defining what constitutes a qualifying disability, the Rehabilitation Act cites to the definition of disability found in 29 U.S.C. § 705(20). *See* 29 U.S.C. § 794(a).  This section defines an "individual with a disability" as any person who "(i) has a physical or mental impairment, which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment."

allege facts supporting a finding that he is disabled or that his disability played a role in his treatment, his ADA claim must fail.

**Discrimination**

An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity.  U.S. Const. amend XIV.  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly "tailored to serve a compelling governmental interest."  *See Plyler v. Doe*, 457 U.S. 202, 216–17 (1982).  When a plaintiff is not a member of a suspect class, he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff has not alleged any facts in support of a claim of unequal treatment or suspect treatment as between himself and other inmates.  Accordingly, the Court finds that Plaintiff's discrimination claim must fail.

**Qualified Immunity**

Defendants have also raised the defense of qualified immunity.  Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their

conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The plaintiff's rights must be so clearly established that a "reasonable official would understand that what he is doing violates that right." *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

When determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies . . . [which] is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Pritchett*, 973 F.2d at 313 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 286, 290 (1999); *see Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified

19

immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577–78 (4th Cir. 2001) (stating that where the court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

In this case, as set forth above, Plaintiff has failed to demonstrate that the actions of Defendants violated any of Plaintiff's constitutional rights. Accordingly, because there is no evidence of a violation of any specific right, it is unnecessary for this court to even address the qualified immunity defense. *See Young*, 238 F.3d at 577–78

**Imposition of a Strike**

Defendants contend the court should impose a strike pursuant to 28 U.S.C.1915(g). Subsection 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The Fourth Circuit has previously held a strike is inappropriate when a plaintiff's claim is dismissed upon a grant of summary judgment. *See, e.g.*, *Pressley v. Rutledge*, 82 F. App'x. 857 (4th Cir. 2003) (unpublished opinion). Therefore, although the Court

20

recommends granting Defendants' motion for summary judgment, the Court declines to recommend the imposition of a strike.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 29, 2011
Greenville, South Carolina